**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAIMLER TRUCK AG, DAIMLER TRUCK NORTH AMERICA LLC, THOMAS BUILT BUSES, INC., and DETROIT DIESEL CORPORATION | Case No. 25-cv-00029 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Daimler Truck AG, Daimler Truck North America LLC, Thomas Built Buses, Inc., and Detroit Diesel Corporation (collectively, "Plaintiffs" or "Daimler") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, the "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon their reputations and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including automotive maintenance and replacement parts, automotive accessories, and consumer goods using infringing and counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants'

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

2

counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Daimler Truck AG is a corporation organized under the laws of Germany with its registered office in Leinfelden-Echterdingen, Germany.

5. Plaintiff Daimler Truck North America LLC is a wholly owned subsidiary of Daimler Truck AG, and is organized under the laws of Delaware with its headquarters in Portland, Oregon.

6. Plaintiff Thomas Built Buses, Inc. is a wholly owned subsidiary of Daimler Truck North America LLC, and is organized under the laws of North Carolina with its principal place of business in High Point, North Carolina.

7. Plaintiff Detroit Diesel Corporation is a wholly owned subsidiary of Daimler Truck North America LLC, and is incorporated under the laws of Delaware with its principal place of business in Detroit, Michigan.

8. Plaintiffs are among the world's largest commercial vehicle manufacturers, selling hundreds of thousands of trucks and busses a year, resulting in over 50 billion dollars in revenue annually. In their global network, Plaintiffs develop and produce trucks and buses that are marketed under the Freightliner, Thomas Built Buses, Western Star, Mercedes-Benz, FUSO, BharatBenz, RIZON and Setra brands (collectively, the "Daimler Brands"). Today, Plaintiffs

3

remain preeminent commercial automotive companies, leading the way in combustion, electric, and autonomous trucks and busses.

9.      Propelled by their reputations and recognizable trademarks, which are carefully curated and monitored, consumers recognize the Daimler Brands as sources of reliable and quality commercial vehicles, vehicle parts and accessories, and various other merchandise and lifestyle products (collectively, the "Daimler Products"). Plaintiffs have registered many of their trademarks with the United States Patent and Trademark Office. Daimler Products typically include at least one of Plaintiffs' registered trademarks. Plaintiffs uses their trademarks in connection with the marketing of Daimler Products, including the following marks which are collectively referred to as the "DAIMLER Trademarks."

| Registration No. | Trademark |
|---|---|
| 93,698 | *G. Daimler* |
| 1,097,365<br>3,988,372<br>3,632,403 | WESTERN STAR |
| 1,124,708 | |
| 1,165,403<br>823,602 | FREIGHTLINER |
| 2,034,349 | FREIGHTLINER CENTURY CLASS |
| 6,135,384 | FREIGHTLINER CUSTOM CHASSIS |

4

| | |
|---|---|
| 7,157,206 | FREIGHTLINER |
| 583,277 | FREIGHTLINER |
| 3,090,259 | STRATOSPHERE |
| 2,579,154 | SMART SHIFT |
| 2,764,558 | COLUMBIA |
| 4,782,633 | XRIDE |
| 4,969,692 | ULTRASTEER |
| 3,544,136 | CASCADIA |
| 6,212,160 | ECASCADIA |
| 4,736,092 | VRIDE |
| 4,610,053 | SMARTPLEX |
| 5,922,106 | ECONICSD |
| 7,408,130 | CORONADO |
| 1,953,453 | BUSINESS CLASS |
| 1,896,915 | EQUIFLO |
| 2,475,922 | AIRLINER |
| 2,324,864 | TUFTRAC |
| 7,416,532 | DTFR |
| 7,416,656 | YOU MAKE US |
| 6,855,094 | FCG |
| 2,864,028 | UNIMOG |
| 2,804,024 | TOPAIR |
| 5,784,179<br>5,975,206 | SELFBUS |

| | |
|---|---|
| 6,077,010<br>5,993,956 | SELFTRUCK |
| 5,363,002 | DUONIC |
| 4,152,565 | OMNIPLUS |
| 6,656,307 | TOURRIDER |
| 1,363,260 | SETRA |
| 2,366,721<br>2,908,884<br>5,010,584 | |
| 3,566,258<br>3,924,410 | |
| 3,218,220 | |
| 2,287,353 | |
| 1,255,257 | DETROIT DIESEL |
| 1,761,009 | |
| 7,412,258 | |

6

| | |
|---|---|
| 6,980,854 | |
| 4,934,861 | |
| 1,610,393<br>1,619,750 | |
| 7,412,256 | |
| 6,639,029 | |
| 6,067,717<br>7,071,370 | |
| 6,067,719 | |

| 5,218,909 | DETROIT ASSURANCE |
|---|---|
| 5,223,583 | |
| 3,785,243 | DD13 |
| 3,462,011 | DD15 |
| 3,838,311 | DD16 |
| 6,058,819 | DT12 |
| 1,855,632 | DDEC |
| 3,253,141 | DIAGNOSTIC LINK |
| 6,639,030 | eFill |
| 1,782,317 | POWER COOL |
| 993,413 | RELIABILT |
| 1,908,347 | SERIES 50 |
| 1,739,682 | SERIES 60 |
| 3,483,903 | SPEC MANAGER |
| 2,639,722 | THOMAS BUILT BUSES |
| 2,654,503 | |
| 3,788,574 | MYBUS |
| 3,788,579 | |
| 1,173,110 | MINOTOUR |
| 6,309,639 | JOULEY |
| 4,969,447 | TRANSIT-LINER |
| 1,174,100 | SAF-T-LINER |

| 6,809,281 | SAF-T-ZONE |
|---|---|

10. The above U.S. registrations for the DAIMLER Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the DAIMLER Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the DAIMLER Trademarks pursuant to 15 U.S.C. § 1057(b). Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the DAIMLER Trademarks are conclusive evidence of the validity of Plaintiffs' DAIMLER Trademarks and of the registrations of the DAIMLER Trademarks, of Plaintiffs' ownership of the DAIMLER Trademarks, and of Plaintiffs' exclusive right to use the DAIMLER Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. True and correct copies of the United States Registration Certificates for the above-listed DAIMLER Trademarks are attached hereto as **Exhibit 1**.

11. The DAIMLER Trademarks are distinctive when applied to the Daimler Products, signifying to the purchaser that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. Whether Plaintiffs manufactures the products, or contracts with others to do so, Plaintiffs ensure that products bearing the DAIMLER Trademarks are manufactured to the highest quality standards.

12. The DAIMLER Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been used by Plaintiffs for many years. The innovative marketing and product designs of the Daimler Products has enabled the Daimler Brands to achieve widespread recognition and fame have made the DAIMLER Trademarks some of the most well-known marks in the industry. The widespread fame, outstanding reputations and significant goodwill associated with the Daimler Brands have made the DAIMLER Trademarks valuable assets to Plaintiffs.

13. Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the DAIMLER Trademarks. In fact, Plaintiffs have expended millions of dollars annually in advertising, promoting, and marketing featuring the DAIMLER Trademarks. Daimler Products have also been the subject of extensive unsolicited publicity resulting from their high quality, performance, and innovative design. As a result, products bearing the DAIMLER Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. Daimler Products have become among the most popular of their kind in the U.S. and the world. The DAIMLER Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the DAIMLER Trademarks is of incalculable and inestimable value to Plaintiffs.

14. Daimler Products are sold online via the Plaintiffs' affiliates' websites, and through online and brick-and-mortar authorized dealers and licensees throughout the United States. Online sales of Daimler Products through authorized channels are significant.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiffs. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics

used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Daimler Brands has resulted in significant counterfeiting of the DAIMLER Trademarks. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiffs have identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, Etsy, DHgate, Temu, and TikTok, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.[2] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[3]

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce

---

[2] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[3] *Id.*

platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6]. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

19.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales of Counterfeit Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-

---

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, *supra* note 3, at p. 186-87.

commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the DAIMLER Trademarks, and none of the Defendants are authorized retailers of genuine DAIMLER Products.

21. Many Defendants also deceive unknowing consumers by using one or more of the DAIMLER Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Daimler Products. Other e-commerce stores operating under Seller Aliases omit using DAIMLER Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Daimler Products.

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

13

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have knowingly

14

and willfully used and continue to use the DAIMLER Trademarks in connection with the advertisement, distribution, offering for sale, and sale of the Counterfeit Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the DAIMLER Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Plaintiffs hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered DAIMLER Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The DAIMLER Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Daimler Products sold or marketed under the DAIMLER Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the DAIMLER Trademarks without Plaintiffs' permission.

32. Plaintiffs are the exclusive owners of their respective DAIMLER Trademarks. Plaintiffs' United States Registrations for the DAIMLER Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiffs' rights in the DAIMLER Trademarks and are willfully infringing and intentionally using counterfeits of the

15

DAIMLER Trademarks. Defendants' willful, intentional, and unauthorized use of the DAIMLER Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of their well-known DAIMLER Trademarks.

35. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Plaintiffs hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

38. By using the DAIMLER Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of their DAIMLER Trademarks and brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using the DAIMLER Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine Daimler Product or is not authorized by Plaintiffs to be sold in connection with the DAIMLER Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any products as genuine Daimler Products or any other products produced by Plaintiffs that are not Plaintiffs', or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the DAIMLER Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

17

d. further infringing the DAIMLER Trademarks and damaging Plaintiffs' goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the DAIMLER Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, Etsy, DHgate, Temu and TikTok (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the DAIMLER Trademarks;

3) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the DAIMLER Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the DAIMLER Trademarks;

5) That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

18

Dated this 2nd day of January 2025.       Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Berel Y. Lakovitsky
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
blakovitsky@gbc.law
ttalhami@gbc.law

*Attorneys for Plaintiffs Daimler Truck AG, Daimler Truck North America LLC, Thomas Built Buses, Inc., and Detroit Diesel Corporation*

19